| | |
|---|---|
| **PETE RIOJAS** § <br> *Plaintiff,* § <br> § <br> vs. § <br> § <br> **MONTE ALTO INDEPENDENT** § <br> **SCHOOL DISTRICT, CONNIE** § <br> **VILLANUEVA, ARMANDO LOPEZ** § <br> **BRENDA CAVAZOS, AND RAUL** § <br> **VALDEZ INDIVIDUALLY AND IN** § <br> **OFFICIAL CAPACITY AS MEMBERS** § <br> **OF THE BOARD OF TRUSTEES** § <br> *Defendants* § | **CIVIL ACTION** <br> **JURY DEMAND** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**COMES NOW PETE RIOJAS** (hereinafter referred to as "Plaintiff") complaining of **MONTE ALTO INDEPENDENT SCHOOL DISTRICT**, (hereinafter referred to as "Defendant" or "District"), **CONNIE VILLANUEVA, ARMANDO LOPEZ, BRENDA CAVAZOS and RAUL VALDEZ** (hereinafter referred to as "Defendants" or "Board Members" or "Members") individually and in their official capacity as members of the Monte Alto Independent Board of Trustees and for such causes of action would respectfully show unto the Court the following:

## I.
## PRELIMINARY STATEMENT

1.1   This is a complaint of retaliation in violation of the First Amendment of the United States Constitution, specifically, while acting under color of law, Defendants took adverse employment action against Plaintiff's employment motivated by political retaliation based on perceived political association that resulted in Plaintiff's wrongful termination.

## II.
## JURISDICTION

2.1   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 451, 1331, 1337, 1343(3), 1345, 1443, and 1441 and 42 U.S.C. Section 1983.

## III.
## VENUE

3.1     Venue in this case is proper under 28 U.S.C. Section 1391(a)(1) & (2) because the employment practices and actions alleged to be unlawful were and are currently being committed within the jurisdiction of the United States District Court for the Southern District of Texas, McAllen Division.

## IV.
## PARTIES

4.1     Plaintiff, **Pete Riojas**, is a resident of Hidalgo County Texas.

4.2     Defendant, **Monte Alto Independent School District** is a local governmental entity. Service of process may be obtained by serving: Honorable Connie Villanueva, President of Defendant's School Board at 25149 1st Street, Monte Alto, Texas 78538.

4.3     Defendant, **Connie Villanueva** is being sued in her individual and official capacity as a member of the District's Board of Trustees and may be served with process at: 25149 1st Street, Monte Alto, Texas 78538.

4.4     Defendant, **Armando Lopez**, is being sued in his individual and official capacity as a member of the District's Board of Trustees and may be served with process at: 25149 1st Street, Monte Alto, Texas 78538.

4.5     Defendant, **Brenda Cavazos**, is being sued in her individual and official capacity as a member of the District's Board of Trustees and may be served with process at: 25149 1st Street, Monte Alto, Texas 78538

4.6     Defendant, **Raul Valdez**, is being sued in her individual and official capacity as a member of the District's Board of Trustees and may be served with process at: 25149 1st Street, Monte Alto, Texas 78538

## V.
## FACTUAL ALLEGATIONS

5.1     Prior to Plaintiff's employment with Defendant, Plaintiff was and currently is a 27-year member of the Edcouch-Elsa Rotary Club along with three of the District's former board members including the former Board President, Olga Chapa.

5.2     Plaintiff and the three former District Board Members had a close relationship

through their association and service with the rotary club and had been seen together on several occasions by other board members including current Board President, Connie Villanueva.

5.3    Plaintiff is not, and was not at any time material hereto, a resident of Monte Alto, Texas. As such, Plaintiff was not eligible to vote in the November 2018 school board elections.

5.4    The former District board members were aware of Plaintiff's work history with Edcouch-Elsa Independent School District in his administrative capacity.

5.5    Plaintiff was hired by the District's former Board of Trustees and started work on or about August 1, 2017, as the District's Business Manager in the Human Resources Department and given a one-year employment contract for 2017-2018 school year. Plaintiff preformed his duties as Business Manager with dedication, loyalty and hard work.

5.6    On May 23, 2018, the former board majority voted to extend Plaintiff's employment for the 2018-2019 school year as its Executive Director of Business Administration.

5.7    While the 2018 school board election campaign proceeded, every morning Superintendent Dr. Richard Rivera held an administrative meeting with employees Barbra Canon, Melinda Chapa and Plaintiff. On six separate occasions during these meetings Ms. Canon would make comments and state, "There are a lot of things going on… if the new board gets elected there are going to be some changes…". Finally, Superintendent Rivera directly asked Barbra Canon what she meant by her comments, Ms. Canon stated, "Yolanda Villarreal, (sister to current school board president Connie Villanueva), informs her regularly that, "If her sister's team gets elected, Connie was going to get rid of Plaintiff, Chapa and Rivera…". "If the new board gets elected, then the first person they would terminate the employment of will be Pete Riojas".

5.8    Defendants Valdez, Cavazos, and Lopez campaigned together as a group with a slogan, "Expect more, Expect Better". Connie Villanueva publicly endorsed then candidates, now current board members Valdez, Cavazos and Lopez who now all sit together as current school board members with Defendant that form the basis of the new board majority.

5.9    On or about November 15, 2018, the new school board was sworn in and was realigned with Connie Villanueva elected as board president by the newly elected board members that she openly and publicly campaigned for during the called board meeting.

5.10   Prior to the Defendant Trustees gaining majority control of the Board of Trustees, Plaintiff had not suffered any adverse employment action due to job performance or otherwise.

3

5.11   The new board majority set about on a campaign retaliating against those employees, such as Plaintiff, who had either not supported their faction or those whom they perceived did not support their faction including current board member Jackie Padilla and her spouse Mr. Jim Padilla who was employed as a Principal with Defendants.

5.12   Plaintiff was perceived by the new board majority to have been politically associated with and had campaigned for the former board members including the former Board President, Olga Chapa, thereby, Plaintiff was retaliated against by the new board majority.

5.13   On January 22, 2019, during its regular scheduled board meeting, Board President, Connie Villanueva, moved and requested a vote on an item to close and remove the position held by Plaintiff.

5.14   On February 26, 2019, the new board majority met and proposed the termination of Plaintiff without his knowledge or notice provided. Defendants sent a written letter to Plaintiff's legal counsel that was received on March 4, 2019. In the March 4, 2019, correspondence signed by Connie Villanueva, false and pretextual reasons were provided for Plaintiff's proposed termination that Plaintiff denied. Plaintiff was informed in the March 4, 2019, letter that a hearing was set for March 7, 2019, by the same board majority to present his case and confront his accusers, although Plaintiff's accusers were the same board members who comprised the majority who already had voted previously to terminate his employment.

5.15   On March 7, 2019, Defendant school board President and her majority voted to terminate Plaintiff. Trustees, Lopez, Cavazos, Valdez and Villanueva all voted against Plaintiff.

5.16   The reasons that the board relied upon to justify Plaintiff's termination was pretextual. The true reason for Plaintiff's employment termination was that the Defendant and the Defendant Board Members retaliated against Plaintiff because of their belief and perception of Plaintiff's political association with their rival former board members political campaign and his involvement during the 2018 school board elections conducted for the Defendant School District.

<u>Additional facts Relating to Specific Defendant Individual Liability: Armando Lopez</u>

5.19   Defendant Armando Lopez retaliated against and terminated Plaintiff. Specifically, On January 22, 2019, Lopez voted to close and remove the position held by Plaintiff.  On March 7, 2019, Lopez voted to terminate Plaintiff from his employment.

4

5.20    Defendant Lopez's retaliatory actions against Plaintiff were motivated by the mistaken belief that Plaintiff had supported his opposing candidate and former board members during the 2018 school board elections.

Additional facts Relating to Specific Defendant: Brenda Cavazos

5.21    Defendant Brenda Cavazos retaliated against and terminated Plaintiff. Specifically, On January 22, 2019, Cavazos voted to close and remove the position held by Plaintiff. On March 7, 2019, Cavazos voted to terminate Plaintiff from his employment.

5.22    Defendant Cavazos's retaliatory actions against Plaintiff were motivated by the mistaken belief that Plaintiff had supported her opposing candidate and former board members during the 2018 school board elections.

Additional facts Relating to Specific Defendant: Raul Valdez

5.23    Defendant Raul Valdez retaliated against and terminated Plaintiff. Specifically, On January 22, 2019, Valdez voted to close and remove the position held by Plaintiff. On March 7, 2019, Valdez voted to terminate Plaintiff from his employment.

5.24    Defendant Valdez's retaliatory actions were against Plaintiff motivated by the mistaken belief that Plaintiff had supported his opposing candidate and former board members during the 2018 school board elections.

Additional facts Relating to Specific Defendant: Connie Villanueva

5.25    Defendant Connie Villanueva retaliated against and terminated Plaintiff. Specifically, On January 22, 2019, Villanueva voted to close and remove the position held by Plaintiff. On March 7, 2019, Villanueva voted to terminate Plaintiff from his employment.

5.26    On or about August 2018, Villanueva entered the District's administration office and accused Plaintiff of targeting her sister, Yolanda Villarreal, because of her candidacy.

5.27    Defendant Villanueva's retaliatory actions against Plaintiff were motivated by the mistaken belief that Plaintiff had supported his opposing candidate and former board members during the 2018 school board elections.

5.28    On or about September 2018, during the ongoing election, Villanueva made

reference in a administrative meeting, whereby board members were present that board members Olga Chapa and Gloria Garate were "Plaintiff's girls". Both Chapa and Garate were perceived by Villanueva as political allies of Plaintiff that were receiving his political support.

## VI.
## CAUSES OF ACTION:
## 42 U.S.C. § 1983 VIOLATION OF FIRST AMENDMENT RIGHT

### A. <u>42 U.S.C. § 1983</u>

6.1     Section 1983 of Title 42 of United States Constitution provides that an individual may seek redress, by way of damages, against any person or persons who, under color of any law, statute, ordinance, regulation, or custom, knowingly subjects such individual to the deprivation of any rights, privileges, or immunities, secured or protected by the U.S. Constitution or laws of the United States. Plaintiff has been subjected to the deprivation of his Constitutional rights as set forth above and below.

### B. <u>Freedom of Association</u>

6.2     Paragraph 5.1 through 5.16 are incorporated herein by reference.

6.3     Plaintiff was perceived to be associated with and actively campaigning for former Board Members during the 2018 district school board elections.

6.4     The First Amendment generally prohibits a government employer from discharging or demoting an employee because of the employee support of a particular political candidate. *Elrod v. Burns, 427 U.S. 347 (1976).* When an employer's motivation to demote or terminate an employee for engaging in a political activity, the employee is protected by the First Amendment, and is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983, even if the employer makes a factual mistake about the employee's (political) behavior. *Heffernan v. City of Paterson, 136 S. Ct. 1412.*

### C. <u>First Amendment Retaliation</u>

6.5     Paragraph 5.1 through 5.16 are incorporated herein by reference Plaintiff incorporates Section V herein by reference.

6.6     Plaintiff was retaliated against on the mistaken belief that Plaintiff was engaging in

6

protected activity of supporting candidates running for the District's Board of Trustees by termination of his employment.

      6.7     Defendants violated the provisions of the 42 U.S.C. § 1983, in that Defendants, acting under the color of State law, deprived Plaintiff of the privileges and immunities secured to him by the First and Fourteenth Amendments of the United States Constitution and , in particular his right to hold employment without infringement of his First Amendment right to freedom of speech.

## VII.
## INDIVIDUAL LIABILITY

      7.1     Paragraph 5.1 through 5.28 are incorporated herein by reference. Defendants have acted outside the proper course and scope of their official duties as members of the board of trustees, in that their individual actions were wholly outside board policy, state regulations, and state and federal laws. Individual Defendant Trustees Valdez, Cavazos, Lopez and Villanueva retaliated against and terminated Plaintiff. They specifically voted to close and remove Plaintiff's position then later voted to terminate him based on their mistaken belief regarding Plaintiff's political association.

      7.2     A plaintiff suing a public official under § 1983 must file a short and plain statement of his complaint, a statement that rests on more than conclusions alone. *Schultes v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). In order to negate the defense of qualified immunity, a Plaintiff must plead sufficient facts to make it plausible that the individual's conduct: (1) violated a "clearly established federal constitutional right;" and (2) was not "objectively reasonable in light of clearly established law." *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir.2003). The law is clearly established that a public employee may be neither discharged nor demoted in retaliation for exercising his First Amendment Rights. More specifically, the Supreme Court has consistently held that governmental officials are forbidden from discharging public employees for their political affiliations, (*Rutan v. Republican Party of Ill.*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Bums*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)), even if the employer makes a factual mistake about the employee's (political) behavior. *Heffernan v. City of Paterson, 136 S. Ct. 1412.* Further, the Fifth Circuit has held that "[t}he law was established clearly enough in this circuit (as far back as) January 1988 that a reasonable officer should have known that if he retaliated against an

employee for exercising his First Amendment rights, he could not escape liability by demoting and transferring the employee rather than discharging him." *Click v. Copeland,* 970 F.2d 106, 109 (5th Cir. 1992)

  7.3  Based on the time of the events, it is clear that Plaintiff's termination was politically motivated by Defendants belief regarding Plaintiff's political association.

## VIII.
## ACTUAL DAMAGES

  8.1  By reason of the above actions alleged above, Plaintiff has been damaged in an amount beyond the minimum jurisdictional level of this court, for which Defendants are jointly and severally liable.

## IX.
## COMPENSATORY DAMAGES

  9.1  Pursuant to the federal statutes cited above, the Plaintiff is entitled to compensatory damages, to include front pay and back pay and any other relief to which he may show himself to be entitled.

## X.
## EQUITABLE RELIEF

  10.1  Plaintiff requests all equitable relief to which he may show himself to be entitled, including front pay, back pay and/or reinstatement.

## XI.
## EXEMPLARY DAMAGES

  11.1  The conduct of the Defendants was carried out willfully, spitefully, and maliciously and constitutes such an entire want of care as to be regarded as conscious indifference to the rights, wellbeing and welfare of this Plaintiff. Plaintiff is hereby entitled to recover exemplary damages to deter such cruel and undignified procedures by the Defendants in the future. Accordingly, Plaintiff requests that exemplary damages be awarded against the Defendants in an amount which exceeds the minimum jurisdictional requirements of this Court. Accordingly, Plaintiff is entitled

to recover from the individual Defendants, in addition to compensatory damages, an award of exemplary damages in the amount of $3,000,000.00, such amount being necessary to deter the Defendants from repeating such wrongful acts in the future.

11.2    The foregoing acts of the Defendants sued individually were willful, humiliating, and insulting to Plaintiff and showed a conscious disregard for the rights of the Plaintiff. Plaintiff is accordingly entitled to recover from each of the individual Defendants, in addition to compensatory damages, an award of exemplary damages in the amount of $1,000,000.00 from each individual Defendant, such amount being necessary to deter the Defendants from repeating such wrongful acts in the future.

## XII.
## ATTORNEY FEES

12.1    Pursuant to the federal statutes under which Plaintiff sues, Plaintiff has been forced to retain the undersigned attorneys to prosecute this claim on his behalf, and he is entitled to recover necessary and reasonable attorney fees, costs of litigation, together with such additional attorney fees as may be awarded by the Court and, in the event of an appeal, to the Fifth Circuit Court of Appeals and the United States Supreme Court, and costs of Court.

## XIII.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, prays that Defendants be cited to appear and answer herein, and for a trial by jury.  Upon trial, Plaintiff prays for an award against Defendants for actual damages in excess of the minimum jurisdictional limits of this Court, front pay, back pay, re-instatement, equitable relief, together with exemplary damages, reasonable attorney fees, costs of court, pre-judgment and post-judgment interest, and entry of declaratory relief and an injunction barring Defendants from interfering with Plaintiff's job security and such other and further relief, in law or in equity, to which Plaintiff may show himself to be justly entitled.

Respectfully Submitted,

*/s/John "Roca" Shergold*
John "Roca" Shergold
Attorney in Charge

State Bar No. 00794624
Federal No. 20768

**HODGE & SHERGOLD, L.L.P.**
1534 East 6th Street, Suite 103
Brownsville, Texas 78520
Tel: 956/548-9100
Fax: 956/548-9102
Email: hodgeshergold@aol.com

**ATTORNEY FOR PLAINTIFF**